IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PIKE POWERS, | § | CV. NO. 1:13-CV-768 |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| DUFF & PHELPS, LLC, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER: (1) DENYING MOTION FOR LEAVE TO FILE SEALED
DOCUMENT; (2) DENYING MOTION TO PRESERVE CONFIDENTIAL
DESIGNATION; (3) GRANTING IN PART AND DENYING IN PART
<u>MOTION TO FILE RESPONSE UNDER SEAL</u>

Before the Court are three motions: (1) a Motion For Leave to File

Sealed Document filed by Duff & Phelps, LLC ("Defendant" or "Duff") (Dkt.

# 28); (2) a Motion to Preserve Confidential Designation filed by Defendant (Dkt.

# 30); and (3) a Motion to File Response Under Seal filed by Plaintiff Pike Powers

("Plaintiff" or "Powers") (Dkt. # 32).  Pursuant to Local Rule 7(h), the Court finds

this matter suitable for disposition without a hearing.  For the reasons that follow,

the Court **DENIES** Defendant's Motion for Leave to File Sealed Document,

**DENIES** Defendant's Motion to Preserve Confidential Designation, and

**GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to File

Response Under Seal.

## BACKGROUND

On September 4, 2013, Plaintiff filed a complaint against Defendant, alleging breach of contract and quantum meruit claims against Defendant. ("Compl.," Dkt. # 1 at 5–6; "Am. Compl.," Dkt. # 16 at 10–11.)  According to Plaintiff, Defendant recruited Plaintiff in 2010 to join its firm in a business development role.  (Am. Compl. at 3.)  Plaintiff's employment agreement provided for a base salary and commissions of 10% to 20% of the revenue received by Defendant from clients that Plaintiff recruited.  (Id.)  Plaintiff alleges that Defendant has failed to provide him appropriate commission for his role in securing a partnership between Defendant and Fulbright & Jaworski ("Fulbright") for litigation support in the "Duke Energy litigation."  (Id. at 4–5.)

On January 16, 2015, Defendant filed a Motion for Summary Judgment (Dkt. # 26).  On January 30, 2015, Defendant filed its Motion for Leave to File Sealed Document (Dkt. # 28); Plaintiff did not respond.  On February 6, 2015, Defendant filed its Motion to Preserve Confidential Designation (Dkt. # 30); Plaintiff did not respond.  On February 9, 2015, Plaintiff filed its Unopposed Motion for Leave to File Sealed Document (Dkt. # 32).

## LEGAL STANDARD

"Courts have recognized that the public has a common law right to inspect and copy judicial records."  S.E.C. v. Van Wayenberghe, 990 F.2d 845,

848 (5th Cir. 1993) (citing <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597

(1978) and <u>Belo Broad. Corp. v. Clark</u>, 654 F.2d 423, 429 (5th Cir. 1981)).

However, the right is not absolute, and the court has discretion to seal records

when "files might . . . become a vehicle for improper purposes." <u>Id.</u> (internal

quotation marks omitted).  Accordingly, a motion to seal records requires the court

to "balance the public's common law right of access against the interests favoring

nondisclosure." <u>Id.</u>  "The movant 'may overcome the presumption of access by

providing sufficiently compelling reasons that override the public policies favoring

disclosure.'" <u>Jeanbaptiste v. Wells Fargo Bank, N.A.</u>, No. 3:14-CV-264-K, 2014

WL 6790737, at *4 (N.D. Tex. Dec. 1, 2014) (quoting <u>Bianco v. Globus Med.,

Inc.</u>, No. 2:12-CV-147-WCB, 2013 WL 3422000, at *2 (E.D. Tex. July 14, 2014)).

DISCUSSION

I.    <u>Motion for Leave to File Sealed Document</u>

In its Motion for Leave to File Sealed Document, Defendant requests

leave to file the following materials under seal, "For Counsel Eyes Only," pursuant

to the March 24, 2014 Protective Order ("Protective Order"): (1) Deposition

Testimony of Gregory Thomas Higgins ("Higgins"), lines 41:7–44:6, 45:6–48:3,

111:17–127:7, 128:16–19, and 145:7–147:18; and (2) Deposition Exhibits 5, 9, 10,

and 28.  (Dkt. # 28, Ex. 3 at 2.)  Defendant does not provide a specific factual basis

for sealing these items individually, but states more generally that the information

3

would "reveal significant technical or business advantages" because it includes "trade secrets, confidential or proprietary information, operational data, business plans, and competitive analysis, personnel files, personal information that is protected by law, and other sensitive information that . . . may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties."  (Id. at 1–2.)  Defendant concludes that sealing is necessary "to protect personal, confidential, and proprietary information."  (Dkt. # 28 at 2.)  Although the documents do not underlie Defendant's Motion for Summary Judgment, Plaintiff relies on some of the said documents in its Response to Defendant's Motion for Summary Judgment.

At the outset, the Court notes that, pursuant to the protective order, sealing documents "For Counsel Eyes Only" is only appropriate for "information of the most sensitive nature which, if disclosed to persons of expertise in the area, would reveal significant technical or business advantages of the producing or designating party, and which includes as a major portion subject matter which is believed to be unknown to the opposing party or parties, or any of the employees of the corporate parties."  ("Prot. Order," Dkt. # 15 ¶ 10.)

A.   <u>Deposition Testimony of Gregory Higgins</u>

1.   <u>Lines 41:7–44:6</u>

Lines 41:7 through 44:6 of Gregory Higgins's ("Higgins") testimony address whether Higgins reprimanded Andrew Capitman ("Capitman") for urging Plaintiff to obtain business with Fulbright on the Duke Energy litigation before the company ran a conflicts check, as well as the company's policy for reprimanding that type of conduct.  ("Higgins Dep.," Dkt. # 28, Ex. A at 41:3–44:6.)

It is unclear how information regarding conflict checks reveals any significant technical or business advantages of the Defendant, and therefore Defendant has failed to advance a compelling reason to seal this statement as "For Counsel Eyes Only."

2.   <u>Lines 45:6–48:3</u>

Lines 46:25–48:3 of Higgins's testimony address whether Capitman received a bonus for the Duke Energy litigation recruitment effort.  (<u>Id.</u> at 46:25–48:3.)  There is no specific information as to the amount of that bonus or the method by which that bonus was calculated.  It is unclear how this information could constitute "information of the most sensitive nature."  Accordingly, Defendant has failed to advance a compelling reason to seal this statement as "For Counsel Eyes Only."

3.    Lines 111:17–127:7

Lines 111:17 through 127:7 concern the profits that Defendant generated for its work on the Duke Energy litigation, as well as its general method of tracking profitability related to particular clients.  (Id. at 111:17–127:7.) Plaintiff cites to the profits disclosed therein in his Response to the Motion for Summary Judgment to support his claims that "By July 15, 2013, collections on the Duke engagement were $6,404,642.58" and "By the end of the engagement, collections were over $8 million."  (Dkt. # 32, Ex. 2 at 13.)

As the Seventh Circuit has aptly observed: "[M]any litigants would like to keep confidential the salary that they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation, they must be revealed."  Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 547 (7th Cir. 2002); see also In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008) (citing Baxter).  The total revenue obtained over the course of the litigation and when that revenue was earned is one of the major factual issues underlying Defendant's Motion for Summary Judgment and Plaintiff's Response.  Accordingly, the public interest in disclosure outweighs the interest Defendant has in confidentiality, and the Court does not find that a "For Counsel Eyes Only" designation is warranted.

4.      Lines 128:16–19

Lines 128:16 through 128:19 address whether Higgins received a bonus in 2012.  (Higgins Dep. 128:16–19.)  Higgins states that he received a bonus, but provides no details about the amount of that bonus or how that bonus was calculated.  Again, the Court is unable to posit any reason why such a vague statement amounts to "information of the most sensitive nature."  Thus, Defendant has failed to advance a compelling reason to seal this statement as "For Counsel Eyes Only."

5.      Lines 145:7 through 147:18

Lines 145:7 through 146:3 concern Higgins's salary and bonus.  (Id. at 145:7–146:1.)  During the exchange, Plaintiff's counsel assured Higgins "you know, counsel for the company can designate these kind of things as confidential under a protective order."  (Id. at 145:12–14.)  After Higgins disclosed his estimated bonus and base salary, he said to his attorney, "You want to designate this as confidential?" to which his counsel replied, "We will."  (Id. at 145:24–146:3.)  This information is highly personal information that is not cited to in any of the summary judgment materials and was disclosed pursuant to a verbal promise to confidentially designate the information.  However, it does not reveal significant technical or business advantages of Defendant, as required for the "For Counsel Eyes Only" designation.  Therefore, although there may well be good

cause to seal the testimony—and the Court will seal that material, filed as part of Plaintiff's Response to Summary Judgment evidence, to prevent public disclosure, as discussed in Part III—Defendant has failed to show a compelling reason to seal the testimony as "For Counsel Eyes Only."

Lines 146:4–147:18 discuss gross revenues and staff bonuses in broad generalities.  (Id. at 146:4–147:18.)  Defendant is a publicly traded company, whose quarterly revenues and expenses are available as information to the general public.  The Court is unable to determine why broad statements about company-wide revenues and testimony that Higgins was unsure if a particular individual received a bonus, but that there is a general bonus pool, is "information of the most sensitive nature" sufficient to compel a designation of "For Counsel Eyes Only."  Accordingly, Defendant has failed to meet its burden.

B.    Deposition Exhibits

1.    Deposition Exhibit 5

Deposition Exhibit 5 is a slide presentation for the Duke Energy Litigation, outlining Defendant's business and relevant experience, including Defendant's past clients.  (Dkt. # 25, Ex. B at 2–35.)  The slides are marked "confidential."  (Id.)  It is possible that the information disclosed on these slides could reveal business advantages of the Defendant.  However, Allen Pfeiffer, a Managing Director of Duff, included Plaintiff on the distribution list of an email

8

attaching the presentation and requesting comments.  Since Plaintiff is certainly familiar with the subject matter contained in Exhibit 5, Defendant cannot make the second half of the showing required for "For Counsel Eyes Only" designation, which requires that the subject matter is unknown to the opposing party. Therefore, although there may well be good cause to seal the testimony, Defendant has failed to show a compelling reason to seal the testimony as "For Counsel Eyes Only."

2.    Deposition Exhibit 9

Deposition Exhibit 9 is an invoice sheet detailing the invoices issued to Fulbright on the Duke Energy litigation from 2011 to 2013.  (Id. at 37–41.)  It is accompanied by an email from Defendant's general counsel to Plaintiff's attorney, stating that the invoice was sent "as a courtesy subject to [Plaintiff's attorney] undertaking to keep it strictly confidential and not disclose it to any person other than [Plaintiff]."  (Id. at 36.)

The Court cannot understand why such documents require sealing "For Counsel Eyes Only," since the email authorizes Plaintiff's counsel to show the invoices to Plaintiff.  More importantly, as discussed above, Plaintiff's compensation for his role in recruiting the Duke Energy litigation is central to the claims at issue in the present litigation.  Accordingly, Defendants have failed to advance a compelling reason to seal the document "For Counsel Eyes Only."

3.      Deposition Exhibit 10

Deposition Exhibit 10 is a services, revenue, and expenditure sheet outlining the charges incurred for the Duke Energy litigation from 2010 to 2014. (Id. at 42–54.)  For the same reasons discussed with regard to Higgins' corresponding testimony, the Court finds that the public interest in disclosure outweighs the interest Defendant has in confidentiality.  Therefore, a "For Counsel Eyes Only" designation is not warranted.

4.      Deposition Exhibit 28

Deposition Exhibit 28 is an email chain discussing the likelihood of receiving the Duke Energy litigation deal, the initial fee estimate, and whether Plaintiff would be entitled to a commission on the deal and if that commission would need to be split with Capitman.  (Id. at 55–57.)  Plaintiff's commission on the Duke Energy litigation is an integral part of the factual issues in the instant litigation.  For the same reasons discussed above, the Court finds that the public interest in disclosure outweighs the interest Defendant has in confidentiality. Therefore, a "For Counsel Eyes Only" designation is not warranted.

C.      Conclusion

Because the Court does not find that Defendant has met its burden to show a compelling reason to seal the requested evidence as "For Counsel Eyes

Only," the Court **DENIES** the Motion for Leave to File Sealed Document (Dkt. # 28.)

II.    Motion to Preserve Confidential Designation

In its Motion to Preserve Confidential Designation, Defendant asks that the Court preserve the following documents as "For Counsel Eyes Only," pursuant to the Protective Order: (1) Deposition Exhibits 9, 10, 15, 16, and 21; (2) Deposition Testimony of Chris Matteson Lines 27:1–31:8, 45:24–49:21, 71:17–81:9, 83:6–85:2, and 94:21–96:20; and (3) Deposition Testimony of Andrew Capitman Lines 17:3–17:15, 19:12–21:25, 50:1–55:5, and 55:9–56:10.  (Dkt. # 30 at 2.)  Again, Defendant does not provide individualized factual bases for designating these items "For Counsel Eyes Only," and instead states more generally that they "contain sensitive information regarding billing to Duff clients, internal Duff Policies on awarding bonuses, and confidential settlement negotiations."  (Id.)  Defendant further contends that the information is "proprietary in nature and would give Duff's competitors an advantage in an extremely competitive market."  (Id.)  Finally, Defendant maintains that the information "constitutes trade secrets" and therefore the designation is appropriate. (Id.)  Defendant indicates that Plaintiff is opposed to designating the documents "For Counsel Eyes Only."  (Id. at 1.)

A.    Deposition Exhibits

1.    Exhibits 9 and 10

As discussed above, the Court does not find cause for designating Exhibits 9 and 10 as "For Counsel Eyes Only."

2.    Exhibit 15

Exhibit 15 is an email from Chris Matteson to Tom Nesbitt titled "Pike Powers Analysis" with an identically named Excel Sheet attachment that lists the cash collected on the Duke Energy litigation, Kabam, and Samsung accounts from 2010 to 2012.  (Dkt. # 33-2 at 26–27.)  Because Plaintiff's commission on the Duke Energy litigation is an integral part of the factual issues in the instant litigation, for the reasons discussed above, the Court finds that the public interest in disclosure outweighs the interest Defendant has in confidentiality. Therefore, a "For Counsel Eyes Only" designation is not warranted.

3.    Exhibit 16

Exhibit 16 is an email from Chris Matteson to Tom Nesbitt titled "P Powers – for settlement purposes only," which states that Defendant is prepared to offer Plaintiff $50,000 in compensation for his role in securing the Duke Energy litigation.  (Dkt. # 33-2 at 28.)  The reasons supporting sealing this email as "For Counsel Eyes Only" is unclear, since the settlement offer should have already been communicated to Plaintiff.  Additionally, as discussed above, Plaintiff's

compensation for his role in recruiting the Duke Energy litigation is central to the claims at issue in the present litigation.  Accordingly, Defendants have failed to advance a compelling reason to seal the document "For Counsel Eyes Only."

          4.     <u>Exhibit 21</u>

Exhibit 21 is an email from Tab Weaver to Kleon Phili titled "FW: feedback re Duke," which contains an email thread indicating that Defendant had likely secured Fulbright as a client on the Duke Energy litigation and that management needed to discuss Plaintiff's commission on the matter.  (Dkt. # 33-2 at 28.)  Again, Plaintiff's commission on the Duke Energy litigation is an integral part of the factual issues in the instant litigation.  For the same reasons discussed above, the Court finds that the public interest in disclosure outweighs the interest Defendant has in confidentiality.  Therefore, a "For Counsel Eyes Only" designation is not warranted.

        B.     <u>Chris Matteson Deposition</u>

          1.     <u>Lines 27:1–31:8</u>

Lines 27:1 through 31:8 of Matteson's testimony discuss financial statements that show the total collections from the Duke Energy litigation, as well as invoices for that litigation.  The total revenue obtained over the course of the litigation is one of the major factual issues underlying Defendant's Motion for Summary Judgment and Plaintiff's Response.  Accordingly, the public interest in

13

disclosure outweighs the interest Defendant has in confidentiality, and the Court does not find that a "For Counsel Eyes Only" designation is warranted.

>  2.  Lines 45:24–49:21

Lines 45:24 through 49:21 of Matteson's testimony discuss a financial report, including the meaning of the allocation categories, which reflects total revenue generated by the Duke Energy litigation as $6.874 million.  For the same reasons discussed above, a "For Counsel Eyes Only" designation is not warranted.

>  3.  Lines 71:17–81:9, Lines 83:6–85:2, and Lines 94:21–96:20

Lines 71:17 through 81:9 of Matteson's testimony discuss the email that Matteson sent to Plaintiff offering him $50,000 in full satisfaction of any potentially owed commissions on the Duke Energy litigation.  Plaintiff's counsel characterizes this amount as 2.66% of the total $1.878 million collected.  Lines 83:6–85:2 of Matteson's testimony again discuss the $50,000 offer and mentions an August 2013 invoice totaling $470,000.  Lines 94:21–96:20 of Matteson's testimony again discuss the $50,000 offer.  For the same reasons discussed above with respect to this email offer and the total revenues collected from the Duke Energy litigation, a "For Counsel Eyes Only" designation is not warranted.

    C.    <u>Andrew Capitman Deposition</u>

    1.    <u>Lines 17:3–17:15, Lines 19:12–21:25, and Lines 50:1–55:5</u>

Lines 17:3 through 17:15 of Capitman's testimony discuss a "cross segment bonus program," wherein managing directors who refer business outside of their business segment can receive up to a 5% bonus after the business has closed. Lines 19:12–21:25 of Capitman's testimony discuss the cross segment $25,000 award that Capitman received in recognition for his role in the Duke Energy litigation recruitment. Lines 50:1–55:55 of Capitman's testimony discuss Capitman's cross segment award for the Duke Energy litigation in more detail, including Capitman's understanding about the manner in which the bonus program is administered.

Plaintiff cites to the cross segment bonus program testimony in his Response to the Motion for Summary Judgment, and contends that the testimony is relevant to resolution of the compensation issue central to this litigation. Accordingly, the public interest in disclosure outweighs the interest Defendant has in confidentiality, and the Court does not find that a "For Counsel Eyes Only" designation is warranted.

    2.    <u>Lines 55:9–56:10</u>

Lines 55:9–56:10 of Capitman's testimony discuss Capitman's understanding of the revenue generated from the Duke Energy litigation, which

Capitman estimated at around $6 million.  The total revenue obtained over the course of the litigation is one of the major factual issues underlying Defendant's Motion for Summary Judgment and Plaintiff's Response.  Accordingly, the public interest in disclosure outweighs the interest Defendant has in confidentiality, and the Court does not find that a "For Counsel Eyes Only" designation is warranted.

      D.    <u>Conclusion</u>

Because the Court does not find that Defendant has met its burden to show a compelling reason to seal the requested evidence as "For Counsel Eyes Only," the Court **DENIES** the Motion to Preserve Confidential Designation (Dkt. # 30.)

III.    <u>Plaintiff's Motion to File Under Seal</u>

In his Motion to File Under Seal, Plaintiff asks for the Court's leave to file his Response to Defendant's Motion for Summary Judgment.  (Dkt. # 32.) Plaintiff contends that the Response contains extensive discussions of documents and deposition testimony that are designated as "Confidential" under the Agreed Protective Order.  (<u>Id.</u> at 1.)

Contrary to Plaintiff's suggestion, the parties' decision to designate documents as confidential does not mandate that the Court seal the record.  The standard for sealing court documents is more stringent than standard for protecting discovery materials under a protective order.  <u>See</u> <u>Udoewa v. Plus4 Credit Union</u>,

754 F. Supp. 2d 850, 882 (S.D. Tex. 2010) (comparing protective order standards

for discovery set out in In re Terra Int'l Inc., 134 F.3d 302, 306 (5th Cir. 1998) (per

curiam) with the standard for sealing documents set out in Van Waeyenberghe, 990

F.2d at 848).  Accordingly, the mere fact that the parties have agreed to designate

the documents as confidential does not demonstrate that sealing those documents

as part of the court record is warranted.

       Here, Plaintiff has not even presented a "bare assertion" or "naked

conclusion" of a compelling reason that warrants the sealing of the record.  Cf.

Pamlab, L.L.C. v. Brookstone Pharm., L.L.C., No. Civ. A 09-7434, 2010 WL

4363870, at *3 (E.D. La. Oct. 22, 2010) (citing the Second and Sixth Circuits to

support the proposition that general statements that disclosure will harm a party are

insufficient to overcome the public's common law right of access to court

documents).  The Response details Plaintiff's role in securing Fulbright as a client

on the Duke Energy litigation, the amount of revenue that project brought to

Defendant, and whether Defendant's bonus scheme properly compensated Plaintiff

for his role in securing that business.  The Court cannot locate anything in the

Response that is sufficiently proprietary or secret to warrant the sealing of the

Response.

       To the extent that the underlying record materials contain confidential

information or personal information that is immaterial to the Court's resolution of

the Motion for Summary Judgment, those materials warrant sealing.  As the Court discussed above, Deposition Exhibit 5 fits in this category, as does Higgins' deposition testimony regarding his salary.  However, absent any additional briefing from Plaintiff, the Court finds these are the only materials in the Response that should be filed under seal.  Accordingly, the Court **GRANTS** Plaintiff's Motion to File Response Under Seal, insofar as it pertains to Deposition Exhibit 5 and Lines 145:7–146:3 of Higgins' deposition testimony.  The Court **DENIES** Plaintiff's Motion as to the Response to the Motion for Summary Judgment and the remainder of the accompanying materials.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court **DENIES** Defendant's Motion for Leave to File Sealed Document (Dkt. # 28) and **DENIES** Defendant's Motion to Preserve Confidential Designation (Dkt. # 30).  The Court **DENIES** Plaintiff's Motion to File Response Under Seal (Dkt. # 32), except as it relates to Deposition Exhibit 5 and Lines 145:7–146:3 of Higgins' deposition testimony, which it **GRANTS**.  The Court hereby **ORDERS** Plaintiff to file the Response with those items redacted for the public record.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, April 17, 2015.

_____
David Alan Ezra
Senior United States Distict Judge