IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PIKE POWERS, | § | CV. NO. 1:13-CV-768 |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| DUFF & PHELPS, LLC, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment filed by Defendant Duff & Phelps ("Defendant" or "Duff") (Dkt. # 26). The Court held a hearing on the Motion on April 22, 2015. At the hearing, Thomas A. Nesbitt, Esq., represented Plaintiff Pike Powers ("Plaintiff" or "Powers"); Richard W. Espey, Esq., represented Defendant. Upon careful consideration of the arguments asserted in the supporting and opposing memoranda, as well as the arguments presented at the hearing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.

BACKGROUND

On September 4, 2013, Plaintiff filed a complaint against Defendant, alleging breach of contract and quantum meruit claims. ("Compl.," Dkt. # 1 at

1

5–6; "Am. Compl.," Dkt. # 16 at 10–11.) According to Plaintiff, Defendant recruited Plaintiff in 2010 to join its firm in a business development role. (Am. Compl. at 3.) On September 3, 2010, Plaintiff and Defendant entered into an employment agreement (the "Agreement"), officially naming Plaintiff as a Business Development Director in the Property Tax practice. ("Mot.," Dkt. # 26, Ex. A.) The Agreement provided for a base salary of $120,000 per year,[1] supplemented with commissions for "qualified engagements" that were developed either through Plaintiff's direct marketing efforts or a lead generated elsewhere and passed along to him. (Id. at 6.) On fixed fee engagements, the Agreement provided commissions at the rate of 20% for Property Tax engagements, 10% for other tax engagements, and up to 10% for all other engagements. (Id.) On contingent fee engagements, the Agreement provided commissions on Property Tax engagements in amounts decreasing annually for the duration of those engagements. (Id. at 7.) The Agreement expressly provided that to receive "credit in calculating a commission payment, the qualifying engagement must be closed and all fees collected." (Id. at 2.) The Agreement provided that Plaintiff's right to commissions extended only during the term of his employment, unless he was terminated without cause, in which case he was entitled to "commissions on

---

[1] In operation, the $120,000 was deducted from Plaintiff's commission, such that Plaintiff would not receive a commission or would receive a reduced commission until the $120,000 had been paid out. (Mot., Ex. A at 6.)

transactions which are closed and fees collected during the term of [his] employment and for a period of 24 months thereafter." (Id. at 6.)

In 2010, Fulbright & Jaworksi ("Fulbright") was retained to represent Duke Energy in a group of cases that were pending in the Western District of Texas's Austin division ("Duke Energy litigation"). (Mot., Ex. B; "Resp.," Dkt. # 39, Ex. 2 at 49:24–50:4.) On November 4, 2010, Berry Spears ("Spears") at Fulbright[2] sent a mass email to various contacts, seeking suggestions for names of real estate experts who could testify in bankruptcy court for the Duke Energy litigation. (Mot., Ex. B; Resp., Dep. Ex. 19.) Upon receiving the email, Plaintiff, unable to connect with Spears on the telephone, reached out to a Fulbright partner, who emailed Spears to recommend that Spears contact Plaintiff about hiring Defendant for the engagement. (Resp., Dep. Ex. 19.) The following day, Andrew Capitman from Defendant's New York office contacted Plaintiff to find out if he could make an introduction to Spears. (Id.) After Plaintiff arranged a phone introduction and meeting, Plaintiff followed up with Spears several times from November to December 2010 to emphasize Defendant's interest in handling the matter and to act as a liaison to supply additional information that Spears required to make the decision. (Id.; Resp., Ex. 4 at 4–5.) Ultimately, Alan Pfeiffer

---

[2] Plaintiff was partner-in-charge of Austin's Fulbright office until 2004, when he became "of counsel" to the firm. (Am. Compl. ¶ 6.) In 2010, as a retiree, he maintained a physical office in Fulbright's Austin office. (Resp., Ex. 4 at 4.)

3

("Pfeiffer") became Defendant's internal lead on preparing the engagement proposal, qualification packet, and presentation, which Pfeiffer circulated to several of Defendant's employees for review, including Plaintiff. (Resp., Ex. 2 at 15:9–16:12; Resp., Dep. Ex. 5.) Pfeiffer pitched the final proposal at a December 6, 2010 teleconference, and Defendant ultimately won the engagement. (Am. Compl. at 6–7.)

Ultimately, Plaintiff and Defendant severed their employment relationship on October 15, 2011, resulting in Plaintiff's termination without cause. (Mot., Ex. E.) Pursuant to the termination agreement, Plaintiff and Defendant agreed to "negotiate in good faith with respect to any transactions closed which remain eligible for commission under Powers' offer letter." (Id.) Throughout 2012 and 2013, Plaintiff, on his own and through his counsel, attempted to collect the commission that he believed he was owed for his role in securing the Duke Energy litigation. (Resp., Ex. 4 at 5–6.)

On September 4, 2013, Plaintiff filed suit against Defendant in this Court. (Dkt. # 1.) Plaintiff alleges breach of contract and quantum meruit claims against Defendant for failing to pay Plaintiff commission on the Duke Energy litigation. (Am. Compl. at 10–11.) Plaintiff seeks actual damages, punitive damages, attorney's fees, and costs. (Id. at 11.)

On January 16, 2015, Defendant filed the instant Motion for Summary Judgment (Dkt. # 26).  Plaintiff filed his Response on February 9, 2015 (Dkt. # 32, Ex. 1),[3] and Defendant filed its Reply on February 23, 2015 (Dkt. # 36).

## LEGAL STANDARD

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

---

[3] Pursuant to this Court's April 17, 2015 order denying Plaintiff's motion to file his response under seal (Dkt. # 38), Plaintiff refiled the response for the public record in accordance with the Court's order on April 20, 2015 (Dkt. # 39).

5

Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

In its Motion for Summary Judgment, Defendant argues that the evidence demonstrates that the failure to pay the Duke Energy litigation commission did not breach the Agreement because Plaintiff's right to commission never vested. (Mot. at 7–9.) Additionally, Defendant contends that Plaintiff's breach of contract claims for (1) failure to negotiate in good faith, (2) failure to issue and submit to Duff's finance department a report stating that the Duke Energy funds have been collected, and (3) failure to issue and submit to Duff's finance department copies of documents cannot succeed because Plaintiff cannot demonstrate that he has suffered any damages as a result of the alleged breaches.

(Id. at 9.)   Finally, Defendant argues that Plaintiff cannot recover in quantum meruit because there is a contract governing the subject matter.  (Id. at 10.)  Separately, Defendant challenges evidence presented in support of Plaintiff's claim as inadmissible parol evidence and evidence of settlement negotiations.  ("Reply," Dkt. # 36 at 1–2.)

I.       Breach of Contract Claims

In his papers, Plaintiff concedes that the Duke Energy litigation falls outside of the scope of the Agreement and therefore abandons the bulk of his breach of contract claims.  (Resp. at 15.)  However, Plaintiff maintains that his breach of contract claim based on failure to negotiate remains and that Defendant breached its duty to negotiate with Plaintiff in good faith, pursuant to the October 4, 2011 addendum to the Agreement promising "to negotiate in good faith with respect to any transactions closed which remain eligible for commission under Powers' offer letter in accordance with that offer letter."  (Resp. at 19–20.)  Defendant counters that the terms of that promise only required Defendant to negotiate in good faith as to commissions due under the Agreement, and since Plaintiff has conceded that Defendant did not breach the Agreement in failing to

pay Plaintiff commission on the Duke Energy litigation, there was no breach of a duty to negotiate in good faith.[4]  (Reply at 6–7.)

The Court agrees with Defendant.  Plaintiff's concession that there was no breach of contract with respect to the Duke Energy litigation means that the failure to pay out that commission did not breach any duty to negotiate as promised in the October 4, 2011 addendum.  Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on the breach of contract claims.

II. <u>Quantum Meruit Claim</u>

Defendant argues that Plaintiff's quantum meruit claim fails because, under New York law,[5] (1) a party cannot recover in quantum meruit when the

---

[4] In its Reply, Defendant also challenges Exhibit 16 as inadmissible evidence of settlement negotiations.  (Reply at 2.)  Federal Rule of Evidence 408 prohibits the admission of statements made in the course of settlement negotiations to prove the validity or amount of a disputed claim.  Fed. R. Evid. 408(a)(2); see also <u>Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.</u>, 597 F.3d 729, 737 (5th Cir. 2010) (reminding that the Federal Rules of Evidence generally apply in diversity cases).  Defendant challenges the admissibility of Deposition Exhibit 16, which is an email memorializing Matteson's $50,000 offer to settle the Duke Energy litigation commission with Plaintiff.  (Reply at 2.)  To the extent that Plaintiff relies on this document to prove the validity of the commission owed him, the evidence is inadmissible as violative of Federal Rule of Evidence 408(a)(2), and the Court **SUSTAINS** the objection.

[5] Defendant contends that New York law applies because the Agreement states, "This Offer Letter, and your resulting employment, shall be governed by and construed in accordance with the internal laws of the state of New York."  (Mot., Ex. A at 4.)  Plaintiff states in a footnote, "Duff moved for summary judgment claiming New York law applies.  Powers does not stipulate that New York Law governs this question but contends that summary judgment is inappropriate under

parties have entered into a contract that governs the subject matter, which Defendant contends they have, and (2) Plaintiff cannot argue both breach of contract and quantum meruit recovery theories because there is no bona fide dispute as to the scope of that agreement. (Mot. at 10.) Plaintiff counters that (1) the contract does not cover the Duke Energy litigation, and (2) the quantum meruit claims are not precluded by the breach of contract claims because there is a bona fide dispute as to the scope of the Agreement. (Resp. at 16.)

A. <u>Applicable Law</u>

To succeed on a quantum meruit claim under New York law, the plaintiff must show "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted) (citing <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 59, 69 (2d Cir. 2000)). "New York law does not permit recovery in quantum meruit, however, if the parties have a valid enforceable contract that governs the same subject matter as the quantum meruit claim." <u>Id.</u>

---

either New York or Texas law." (Resp. at 17 n.8.) But for these two sentences, Plaintiff does not make any argument about why Texas law would apply, nor does Plaintiff make any argument regarding or include any citation to Texas law. Accordingly, the Court only addresses the claims under New York law.

B.   Whether the Commission is Within the Scope of the Agreement

Plaintiff maintains that his commission from the Duke Energy litigation is outside the scope of the Agreement, since commissions for engagements outside of the Property Tax and Other Tax service lines are carved out of the Agreement and because the Agreement only applies to fixed fee engagements, which it argues the Duke Litigation was not. (Mot. at 18–19.) Defendant counters that the Agreement specifically outlines the terms and conditions under which Plaintiff would receive commission and that his base salary provides the compensation for services provided outside of the Property Tax service line. (Reply at 3–4.)

The seminal case on the "same subject matter" issue is Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382 (1987), which involved construction claims between a construction company and a rail road company. According to the plaintiff, the contract's detailed engineering specifications were flawed and the plaintiff had to undertake significant design changes. Id. at 389. The plaintiff sought to recoup the damages that it incurred in implementing these changes through a quasi-contract claim. Id. However, the court rejected the plaintiff's argument for quasi-contract recovery, reasoning that the "relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions, and specifically providing for project

10

design changes with adjustments in compensation contemplated in light of those changes." Id. at 389.  Accordingly, the court dismissed the quasi-contract claim because the scope of the work performed for which the plaintiff sought damages was clearly within the terms of the contract.  Id.

"Decisions interpreting Clark-Fitzpatrick have made clear that the predicate for dismissing quasi-contract claims is that the contract at issue 'clearly covers the dispute between the parties.'"  Union Bank, N.A. v. CBS Corp., No. 08 CIV. 08362 (PGG), 2009 WL 1675087, at *7 (S.D.N.Y. June 10, 2009).  Defendant, cites, for example, to Aledia v. HSH Nordbank AG, No. 08 CIV. 4342, 2009 WL 855951 (S.D.N.Y. Mar. 25, 2009), where the court found that the plaintiff's quantum meruit claim was barred because the applicable contract provision unambiguously covered the subject matter of the dispute.  Id. at *3.  There, the plaintiff sought commission payments that were not paid as promised.  Id. at *1.  The court reasoned that, although the plaintiff's employment agreement was unclear as to when commissions would vest, the agreement unambiguously "addresse[d] the award, vesting, and payment of incentive compensation to Plaintiff."  Id. at *3.  Accordingly, the court found quantum meruit recovery unwarranted.  Similarly, in Bader v. Wells Fargo Home Mortgage Inc., 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011), the plaintiffs sought bonus compensation for business they generated prior to their termination.  Id.  After determining that

written contracts clearly governed the claims at issue, the court concluded that the plaintiffs' quantum meruit claims could not succeed.  Id.

However, courts have come to opposite conclusions when the contract is silent as to the disputed issue.  For example, in Joseph Sternberg, Inc. v. Walber 36th Street Assocs., 594 N.Y.S.2d 144 (N.Y. App. Div. 1993), the court found that the quantum meruit claim made by the plaintiff, a real estate brokerage, should proceed to jury trial because there was a bona fide dispute as to whether the plaintiff's commission was covered in the scope of the contract.  Id.  There, the plaintiff made an agreement to negotiate the purchase of a real estate property for $11.5 million, for which he would receive a $450,000 commission payable upon closing.  Id. Ultimately, the transaction closed at $10.6 million and the plaintiff was not paid a commission.  Id.  The court reasoned that the quantum meruit claim could proceed, distinguishing the facts from those in Clark-Fitzgerald, and finding that "the contract at issue here is silent as to plaintiff's entitlement to a commission in the event a sale of the building occurred for a lesser price."[6]  Id.  Likewise, in In re Coudert Brothers, 487 B.R. 375 (Bankr. S.D.N.Y. 2013), the court concluded that the plaintiff law firm's quantum meruit claim for lobbying services was not

---

[6] Defendant's claim that this case is inapplicable because "the dispute was in regards to a real estate broker's contract, not an employee agreement" is misplaced.  (See Reply at 3.)  The standards governing the feasibility of a quantum meruit claim do not change based on the type of agreement the parties have entered into; the applicable inquiry is whether the subject matter of the dispute was within the scope of the original agreement.

barred by its contract with its client-defendant. Id. at 397. The court reasoned that because the scope of the agreement was litigation, and because the contract was silent as to compensation for lobbying services and the client requested the plaintiff's lobbying services, the lobbying services "unambiguously f[e]ll outside the scope of the [a]greement" and quantum meruit recovery was available. Id.; see also AHA Sales, Inc. v. Creative Bath Prods., Inc., 867 N.Y.S.2d 169 (N.Y. App. Div. 2008) (permitting the quantum meruit claim where the parties' agreements only covered specific accounts and the claims for recovery related to accounts outside of those enumerated in the agreements).

Here, the Agreement sets out the following terms regarding Plaintiff's compensation: (1) Plaintiff was employed full-time to "perform such services, duties and tasks for the Company as shall be reasonably requested by the Company"; (2) Plaintiff was entitled to commissions on all qualifying engagements, which the Agreement defined as engagements that are "closed and all related fees collected, and . . . developed from either: (a) [Plaintiff's] direct marketing efforts, or (b) a lead generated elsewhere and passed to [Plaintiff]"; (3) commissions were to be provided for fixed fee engagements in the amount of 20% for the Property Tax service line, 10% for all other Tax service lines, and up to 10% for all other services lines and for contingent fee engagements in declining annual amounts for the Property Tax service line; and (4) the right to receive

commissions ends upon termination, unless that termination was not for cause, in which case Plaintiff was entitled to commissions "on transactions which are closed and fees collected during the term of [his] employment and for a period of 24 months thereafter." (Mot., Ex. A.)

The evidence is undisputed that the Duke Energy litigation was business developed for the dispute and legal management consulting ("DLMC") service line, which is distinct from the Property Tax and other tax service lines. (See Weaver Dep. at 96:11–13.) The contract clearly provides Plaintiff's commission compensation scheme for that service line when the engagement is a fixed fee engagement: commissions are at the discretion of the service line leadership, in an amount up to 10%. (Mot., Ex. at 6.) Accordingly, if the engagement was a fixed fee engagement, the commission is unambiguously within the scope of the agreement. See, e.g., Aledia, 2009 WL 855951, at *3.

However, Plaintiff and Defendant agree that the Duke Energy Litigation was not a fixed fee engagement.[7] The contract is silent as to whether

---

[7] In its Response, Plaintiff states: "There is no evidence, and Duff does not allege, that the Duke engagement was for a fixed fee. In fact, the summary judgment evidence shows that the Duke engagement involved variable, not fixed, fees." (Resp. at 19.) In support, Plaintiff cites to generalized testimony from Higgins regarding the Duke Energy litigation invoices, as well as two financial statements on the Duke Energy litigation which show that Fulbright was invoiced different amounts on different dates. At the hearing, Defendant stated that the Duke Energy litigation was not a fixed fee engagement and instead had a "variable" fee arrangement.

Plaintiff receives any compensation for contingency fee engagements outside the Property Tax service line, and the contract is unclear as to whether that silence is because—as Defendant argues—the work came within Plaintiff's general employment obligations as a salaried employee, or because—as Plaintiff argues—the work was outside the scope of the Agreement. Accordingly, the contract's silence is sufficient to create a bona fide dispute[8] as to whether a contingency fee engagement for the DLMC service line is within the scope of the Agreement. See, e.g., Joseph Sternberg, 594 N.Y.S.2d 144.[9]

---

[8] Because the contract is ambiguous on this issue, the parol evidence rule does not bar the admission of extrinsic evidence to explain the meaning of the contract. "The parol evidence rule generally prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have reduced to an unambiguous integrated writing." Gualandi v. Adams, 385 F.3d 236, 241 (2d Cir. 2004). Because the Agreement is ambiguous as to whether non-Property Tax service line contingency fee engagements are included, the parol evidence rule does not bar evidence to clarify that issue. Therefore, to the extent that Defendant's evidentiary objection challenges intent evidence on the contingency fee section of the contract, that objection is **OVERRULED**. To the extent that the objection challenges intent evidence on other sections of the contract, Defendant's objection is **SUSTAINED**.

[9] Defendant's reading of Aledia and Bader is overbroad. Defendant contends that these two cases show that because the Agreement addresses commissions in general, all issues related to commissions are within the scope of the Agreement. The overbreadth of such argument is evidenced by reading AHA Sales, where the court found that the compensation claims were outside the scope of the agreement where the agreement addressed compensation for specific accounts, but the quantum meruit claim sought recovery on compensation owed for accounts not specifically enumerated therein. 867 N.Y.S.2d 169. There, the mere fact that the agreement addressed compensation did not bar any quantum meruit claim for compensation, since the agreement was silent on the disputed issue. See id.

Because there is a genuine dispute of material fact as to whether Plaintiff's commission for the Duke Energy litigation was within the scope of the Agreement, Defendant's motion for summary judgment on the quantum meruit claim is **DENIED.**

## CONCLUSION

For the aforementioned reasons, the **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (Dkt. # 26). Accordingly, only Plaintiff's quantum meruit claim remains.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, April 28, 2015.

_____
David Alan Ezra
Senior United States Distict Judge

---

Similarly, here, the mere fact at the Agreement addresses commissions does not necessarily bar a quantum meruit claim, where the Agreement distinguishes fixed and contingent fee engagements and Plaintiff may seek to recover a commission on a contingent fee engagement in a service line that is not enumerated in the contract.